[Civ. No. 25338. Second Dist., Div. Three. Mar. 16, 1962.]

NARVEL M. KENNEDY, Plaintiff and Appellant, v. GEORGE BYRUM et al., Defendants and Respondents.

476
476

Edward L. Lacy for Plaintiff and Appellant.

Roeschlaub & McLellan and Walter J. McLellan for Defendants and Respondents.

FORD, J.—The plaintiff, Narvel M. Kennedy, brought this action against George Byrum and George Byrum, Inc. He alleged that on or about September 27, 1957, he signed a conditional sales contract for the purchase of a new automobile in which contract it was stated that the unpaid balance was $2,577.30, payable in 30 monthly installments of $85.91, but that upon the delivery of the automobile he was given a copy of a forged conditional sales contract which showed a balance of $3,092.76.[1] It was further alleged that the forged contract had been assigned to a finance company and that, as a proximate result of the defendants' fraud and deceit, the plaintiff had suffered actual damages in the sum of $1,015.46. Exemplary damages in the amount of $10,000 were also sought. By their answer, the defendants denied that the conditional sales contract, a copy of which had been given to the plaintiff, was not genuine.

In addition to their answer, George Byrum and George Byrum, Inc., filed a cross-complaint against the plaintiff. Therein it was alleged that on or about October 10, 1957, Mr. Kennedy filed an action against the cross-complainants upon the same transaction as that upon which the complaint in the present action was based. After the cross-complainants herein had filed their answer in the earlier action and the matter had been set for trial, without their consent or knowledge Mr. Kennedy dismissed that action without prejudice. A judgment for costs was thereafter entered in favor of the defendants therein. With respect to that earlier case, the cross-complainants alleged that they expended $500 for attorney's fees. In addition to other damages, exemplary damages in the sum of $5,000 were sought. The cross-complaint contained allegations appropriate to an action for malicious prosecution. (See *Albertson* v. *Raboff*, 46 Cal.2d 375, 382-383 [295 P.2d 405].) An examination of the complaint in the first

---

[1]The record discloses that the contract provided that the sum of $3,092.76 was payable in 36 monthly installments of $85.91.

action, a copy of which was attached as an exhibit to the cross-complaint, reveals that in the earlier case Mr. Kennedy alleged that the conditional sales contract he had signed had been altered by changing certain figures therein. Mr. Kennedy filed an answer to the cross-complaint in which he alleged that all of the allegations of his original complaint were true and in which he denied the allegations relating to malicious prosecution.

Upon the trial of the action, the court found that the contract, a copy of which had been given to the plaintiff, was not a forged contract as alleged by him but was the contract which had been entered into by the plaintiff and the defendant automobile dealer. The allegations of the cross-complaint were found to be true except that the damages were found not to be ''in any sum in excess of Five Hundred Dollars ($500.00) general damages and One Hundred Dollars ($100.00) punitive damages.'' The judgment was that the plaintiff take nothing by his complaint and that the cross-complainants recover the sum of $600, together with their costs. The present appeal is from the judgment and from an order denying the motion of the plaintiff and cross-defendant to tax costs with respect to the fee of an expert witness.

The plaintiff and cross-defendant makes an attack upon the findings of fact. For instance, he asserts that certain allegations which were admitted to be true were found by the court to be false. However, no finding is necessary as to any allegation admitted by the pleadings and a finding contrary thereto cannot stand. (See *County of Los Angeles* v. *Beverley,* 126 Cal.App.2d 89, 92 [271 P.2d 965].) He further argues that there are inconsistencies in the findings of fact. But, as stated in *Berry* v. *Crowell,* 55 Cal.App. 534 [203 P. 835], at page 537: ''If sufficient can be gathered from the whole of the findings of the court that material issues are fairly determined, the finding will support the judgment. 'It was not necessary that the facts as found should be in any particular form or follow the pleadings. If the truth or falsity of each material allegation in issue can be demonstrated from the findings, the law is complied with.' (*Ready* v. *McDonald,* 128 Cal. 663 [79 Am.St.Rep. 76, 61 P. 272] ; *Millard* v. *Legion of Honor,* 81 Cal. 340 [22 P. 864].) So, also where findings are seemingly contradictory. (*American Nat. Bank* v. *Donnellan,* 170 Cal. 15 [Ann.Cas. 1917C, 744, 148 P. 188].)'' The findings of fact as to the material

issues in the present case, when examined in the light of the applicable law, are sufficient.

Insofar as the appellant attacks the sufficiency of the evidence to sustain any material finding of fact of the trial court, the power of the appellate court is limited to a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding of fact. When more than one inference can reasonably be deduced from the facts, the reviewing court cannot substitute its deductions for those of the trial court. (*Grainger* v. *Antoyan*, 48 Cal.2d 805, 807 [313 P.2d 848].)

The plaintiff did not contend that he had signed a partially incomplete form of contract in which figures were later inserted. (See, e.g., *Foster* v. *Masters Pontiac Co.*, 158 Cal.App.2d 481, 484 [322 P.2d 592].) Rather it was his testimony that certain figures in the only conditional sales contract which he had signed were different from those set forth in a contract claimed by the defendants to be the one he had signed and a copy of which he received the next day when the automobile was delivered. In two places the contract in question bore a signature which the plaintiff and his wife testified was not his signature. However, Joseph Petty, who was the sales manager of the automobile concern at the time, testified that he saw Mr. Kennedy sign the contract. Furthermore, John J. Harris, a handwriting expert, testified that in his opinion there had been no alterations made in the contract, that the carbon copies were carbon duplicates made at the same time as the original, and that the contract bore the signatures of Mr. Kennedy as evidenced by a comparison of the disputed signatures with exemplars shown to be genuine. Consequently, it is clear that the trier of fact was warranted in reaching the conclusion that the contract in question was the one which Mr. Kennedy had signed. No basis for a reversal of the judgment appears in the record with respect to the disposition made of the issues raised by the complaint and the answer.

As to their cross-complaint in which they sought to recover damages for malicious prosecution, the cross-complainants were required to prove (1) a favorable termination of the former suit; (2) want of probable cause; and (3) malice. (*Masterson* v. *Pig'n Whistle Corp.*, 161 Cal.App.2d 323, 335 [326 P.2d 918].)

The record shows that there had been a termination of the earlier action in favor of the cross-complainants in the present

480

case. As stated in *Hurgren* v. *Union Mutual Life Ins. Co.,* 141 Cal. 585 [75 P. 168], at pages 587-588: ". . . it is now the well-established rule that a verdict or final determination upon the merits of the malicious civil suit or criminal prosecution complained of is not necessary to the maintenance of an action for malicious prosecution, but that it is sufficient to show that the former proceeding had been *legally terminated.* The fact that such legal termination would not be a bar to another civil suit or criminal prosecution founded on the same alleged cause is no defense to the action for malicious prosecution; otherwise, a party might be continuously harassed by one suit after another, each dismissed before any opportunity for a trial on the merits." In *Hudson* v. *Zumwalt,* 64 Cal.App.2d 866 [149 P.2d 457], it was said at page 872: "While it is necessary to prove that the former malicious action was terminated favorably to the party claiming injury, it need not be shown that it was finally decided on its merits. It is sufficient if it was disposed of in such a manner as to require the plaintiff to institute another action to try the issues presented. (*Hurgren* v. *Union Mutual Life Ins. Co.,* 141 Cal. 585 [75 P. 168] ; *Jaffe* v. *Stone,* 18 Cal.2d 146 [114 P.2d 335, 135 A.L.R. 775] ; 16 Cal.Jur. 734, § 7; 135 A.L.R. 793, note.)"

With respect to the matter of the lack of probable cause, this court stated in *Masterson* v. *Pig'n Whistle Corp., supra,* 161 Cal.App.2d 323, at page 335: "Probable cause is synonymous with reasonable cause. One who commences a civil suit acts upon probable cause if he has an honest belief, founded upon facts sufficiently strong to justify his belief, that grounds exist for the proceeding. (*Hudson* v. *Zumwalt,* 64 Cal.App.2d 866, 872 [149 P.2d 457].)
Probable cause has been defined as 'a suspicion founded upon circumstances sufficiently strong to warrant a reasonable man in the belief that the charge is true.' (*Centers* v. *Dollar Markets,* 99 Cal.App.2d 534, 540 [222 P.2d 136].) And, where the circumstances are such as to satisfy a reasonable man that there is no basis for suit, probable cause is lacking. (*Metzenbaum* v. *Metzenbaum,* 121 Cal.App.2d 64, 68 [262 P.2d 596].)"

The trial court found to be true the allegation of the cross-complaint that all of the allegations of the complaint in the former action were "wholly false and untrue and were known by cross-defendant to be wholly false and untrue at the time of the commencement of said other action."

Resort may be had to the written opinion of the trial court for such light as it affords as to the course of reasoning underlying the court's determination. (*Cf. Union Sugar Co.* v. *Hollister Estate Co.*, 3 Cal.2d 740, 750 [47 P.2d 273].)

From the statements therein it appears that the trial judge as the trier of fact believed that Mr. Kennedy knew that the contract in question was genuine. Under such circumstances there was no probable cause for bringing the former action. Since that deduction as to Mr. Kennedy's knowledge has substantial support in the evidence and the inferences which find a reasonable basis therein, this court cannot interfere therewith. As was said in *Clary* v. *Hale*, 175 Cal.App.2d 880 [1 Cal.Rptr. 91], at page 890: "But as a reviewing court we cannot hold unsupported the findings of the trial judge merely because we might reasonably draw inferences different from those he drew or might feel that the preponderance of the evidence was in plaintiff's favor."

It is true that when the taking of evidence had been completed the trial judge made an oral statement which was inconsistent with his later written opinion and with his findings of fact as to the cross-complaint. But as said in *Shasta Water Co.* v. *Croke*, 128 Cal.App.2d 760 [276 P.2d 88], at pages 764-765: "The court's prior oral statement was not a finding in the technical meaning of the word, as findings must be in writing. (Code Civ. Proc., § 632.) Such prior oral statements as to its evaluation of the evidence do not restrict the court's power to make contrary formal findings. (*Scholle* v. *Finnell*, 173 Cal. 372, 376 [159 P. 1179]; *Putman* v. *Superior Court*, 209 Cal. 223, 227 [286 P. 425]; *Huth* v. *Katz*, 30 Cal.2d 605, 609 [184 P.2d 521].)" In *Diaz* v. *Shultz*, 81 Cal.App.2d 328 [183 P.2d 717], the court stated at page 333: ". . . the deliberations of courts are conclusively merged in their final orders, decisions and judgments, and . . . the oral or even written opinions of trial judges may not be considered for the purpose of reversing such orders, decisions or judgments."

Reliance in good faith on the advice of counsel is a defense to an action for malicious prosecution, inasmuch as such defense shows probable cause. (*Schubkegel* v. *Gordino*, 56 Cal.App.2d 667, 672 [133 P.2d 475]; *Montz* v. *Nevins*, 40 Cal.App. 202, 207 [180 P. 537].) But such defense is not available unless there has been a disclosure to the attorney of all of the pertinent facts within the knowledge of the client.

(*Schubkegel* v. *Gordino, supra,* at p. 673.) ▮ Since the trial court found, at least impliedly, that Mr. Kennedy knew that the contract in question was the one which he had signed and that it had not been altered, a full, fair and complete disclosure of such facts to his attorney obviously could not have resulted in advice upon which he could have acted in good faith in the institution of the earlier action. (See *Albertson* v. *Raboff,* 185 Cal.App.2d 372, 386 [8 Cal. Rptr. 398].)

▮ Malice may be inferred from a want of probable cause. (*Masterson* v. *Pig'n Whistle Corp., supra,* 161 Cal.App. 2d 323, 338.) ▮ That such inference was the basis for the trial court's ultimate determination in the present case appears from the written opinion filed sometime after the court's oral comments, although the particular language was used with respect to the matter of exemplary damages. As has been noted, that opinion may be considered for the purpose of discovering the process by which the trial judge arrived at his conclusion. (*Union Sugar Co.* v. *Hollister Estate Co., supra,* 3 Cal.2d 740, 750.) Therein the court stated: ". . . it being the feeling of the Court that since Mr. Kennedy must necessarily have known that the contract in question was genuine that the filing of a suit based upon the contention that it was a forgery was necessarily the consequence of malice." (*Cf. Albertson* v. *Raboff, supra,* 46 Cal. 2d 375, 383.)

Under the circumstances, the cross-complainants were entitled to recover as compensatory damages attorney's fees paid by them in their defense against the claim of Mr. Kennedy in the former action. (*Metzenbaum* v. *Metzenbaum,* 121 Cal.App.2d 64, 69 [262 P.2d 596].) The trial court could determine the reasonableness of the charges made for such legal services without recourse to expert testimony. (See *Peebler* v. *Olds,* 71 Cal.App.2d 382, 389 [162 P.2d 953].) Moreover, the proof justified the award of exemplary damages. (See *Finney* v. *Lockhart,* 35 Cal.2d 161, 162-163 [217 P.2d 19] ; *Metzenbaum* v. *Metzenbaum, supra,* 121 Cal.App. 2d 64, 69.)

▮ The plaintiff and cross-defendant sought to strike from the cost bill of the prevailing parties an item of $200 which was the fee of the handwriting expert for his services. His motion was denied. The propriety of the allowance of the item finds support in the record. During the course of the trial, the court asked counsel for the defendants and cross-

complainants: "Is your expert present . . .?" That attorney answered: "Yes, your Honor. I would like to make the record clear . . . my understanding is this expert has been appointed by the Court and in the event the plaintiff fails to prevail in this action, any cost or any fees advanced by defendants and cross-complainants to pay the fee of the expert witness, Harris and Harris, will be recoverable costs by the defendants in such event." The court replied: "That is correct, at least in part. The Court did not select the witness but it was at my recommendation. I will make the order that the expense incurred in producing this witness and having the examination conducted will be properly an item of costs." Thereupon the expert took the witness stand. It is manifest that there was actually no *particular* expert witness named by the court pursuant to section 1871 of the Code of Civil Procedure,[2] except insofar as such designation was implicit in the fact that in the record the identity of the witness, John J. Harris, was disclosed immediately after the court's statement. The actual choice of the particular expert witness appears to have been that of counsel for the defendants and cross-complainants. But since an expert was employed upon the recommendation of the court, and the one selected was acceptable to the court, the failure to make the initial selection in a more formal manner was but a harmless irregularity.

The judgment and the order are affirmed.

Shinn, P. J., and Files, J., concurred.

A petition for a rehearing was denied April 11, 1962.

---

[2]Section 1871 of the Code of Civil Procedure is in part as follows: "Whenever it shall be made to appear to any court or judge thereof, either before or during the trial of any action or proceeding, . . . pending before such court, that expert evidence is, or will be required by the court or any party to such action or proceeding, such court or judge may, on motion of any party, or on motion of such court or judge, appoint one or more experts to investigate and testify at the trial of such action or proceeding relative to the matter or matters as to which such expert evidence is, or will be required, and such court or judge may fix the compensation of such expert or experts for such services, if any, as such expert or experts may have rendered, in addition to his or their services as a witness or witnesses, at such amount or amounts as to the court or judge may seem reasonable. . . . Except as above otherwise provided, in all civil actions and proceedings such compensation shall, in the first instance, be apportioned and charged to the several parties in such proportion as the court or judge may determine and may thereafter be taxed and allowed in like manner as other costs."